UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

YVONNE L. TINES JONES,                )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )
                                      )         Civil Action No.
NORMAN Y. MINETA,                     )         05-10082-EFH
Secretary,                            )
U.S. DEPARTMENT OF                    )
TRANSPORTATION,                       )
                                      )
        Defendant.                    )
_____)

### THE DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
### MOTION FOR SUMMARY JUDGMENT

The defendant, Norman Y. Mineta, Secretary of the Department of Transportation (the

"DOT"), submits this Memorandum in support of his Motion for Summary Judgment.  For the

reasons set forth below, the facts show that the DOT is entitled to judgment as a matter of law.

### I.     INTRODUCTION

The plaintiff, Yvonne L. Tines Jones ("Tines Jones") has alleged discrimination in

employment based on race, color and national origin and retaliation.  She also claims

discrimination and failure to accommodate her handicap (anxiety and stress) under the

Rehabilitation Act.  For the following reasons, all of Tines Jones' claims should be dismissed.

### II.    LOCAL RULE 56.1 STATEMENT OF FACTS

The DOT incorporates its Local Rule 56.1 Statement of Material Facts as if stated herein.

### III.   STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  To prevail on summary judgment, the moving party must only show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); See also Fontan v. Potter, 2006 WL 1663548 *7.

The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(c); Fontan, 2006 WL 1663548 *7 (D. Puerto Rico).  "To overcome summary judgment the non-moving party must rebut such a showing by presenting sufficient evidence from which a jury could reasonably find in its favor." De Jesus v. Potter, 211 Fed.Appx. 5, 9 (1st Cir. 2006) (citing Davric Marine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000)). "Even in ... cases where elusive concepts such as motive or intent are at issue, this standard *compels* summary judgment if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculations."  Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (quoting Medina Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

Tines Jones has not "set forth specific facts" and her arguments rely on "conclusory allegations, improbable inferences, and unsupported speculations," and as such, the DOT is entitled to summary judgment as a matter of law.

## IV.    BURDEN SHIFTING UNDER TITLE VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).  In a case where there is no direct evidence of race or national origin discrimination, the plaintiff has the initial burden of proof, and must establish a prima facie case for discrimination.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This burden will be met when
Tines Jones shows that "(1) [she] is a member of a protected class; (2) [her] employer took an
adverse employment action against [her]; (3) [she] was qualified for the position held; and (iv)
[her] position remained open or was filled by a person whose qualifications were similar to
[hers]." Straughn v. Delta Air Lines, Inc. 250 F.3d 23, 33 (1st Cir. 2001) (citing Rodriguez-
Cuervos v. Walmart Stores, Inc. 181 F.3d 15, 19 (1st Cir. 1999)), See also McDonnell Douglas
Corp. 411 U.S. at 802; Douglas v. J.C. Penney Company, Inc. 474 F.3d 10, 13 (1st Cir. 2007).
This is the first part of the "McDonnell Douglas ... burden-shifting analysis to the Title VII ...
claims." Straughn 250 F.3d at 33.

Once Tines Jones has made a showing of all elements for a prima facie case, the burden
shifts to the employer. "Establishment of the prima facie case in effect creates a presumption
that the employer unlawfully discriminated against the employee." Texas Department of
Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The employer must then rebut the
presumption by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's
rejection." McDonnell Douglas Corp. 411 U.S. at 802; Straughn, 250 F.3d at 33.

Once the employer has articulated a nondiscriminatory reason, the burden shifts back to
Tines Jones to persuade the trier of fact that she was clearly discriminated against, and that the
articulated reason for the adverse action was a pretext. McDonnell Douglas Corp. 411 U.S. at
805, (states that the complainant "must be given a full and fair opportunity to demonstrate by
competent evidence that the presumptively valid reasons ... [were pretext for] a racially
discriminatory decision"); See also Douglas 474 F.3d at 14. The evidence may be used to show
both discrimination and pretext, and must be "sufficient ... to infer that the employer's decision
was motivated by discriminatory animus." Smith v. Strauss Computer, Inc. 40 F.3d 11, 16 (1st

Cir. 1995).

## V.    RACE, COLOR AND NATIONAL ORIGIN DISCRIMINATION (Count I)

The DOT, for the purposes of this Motion only, concedes that Tines Jones meets the first element required to establish a prima facie case for discrimination.  Tines Jones fails, however, to meet the remaining elements necessary to establish a prima facie case for discrimination.

### A.    Tines Jones Did Not File a Timely Complaint With the EEOC.

Any person who alleges that they have been discriminated against on account of their race, color, religion, sex, national origin, age or handicap must first meet with an Equal Employment Opportunity Counselor ("EEO Counselor") within 45 days of the alleged discriminatory action.  29 C.F.R. 1614.105; Rolland v. Potter, 453 F. Supp. 2d, 223, 230 (1st Cir 2006); Velazquez-Rivera v. Danzig, 234 F.3d 790, 795 (1st Cir. 2000).  An extension will be granted in cases where the employee was unaware of the time requirement, where the employee had no knowledge of or could not have reasonably known of the discrimination, or where there were other circumstances preventing the employee from contacting a Counselor.  Id.  Here, Tines Jones cannot present any facts to justify an extension of the 45 day time requirement.

Tines Jones has worked for the DOT in some capacity since 1989, specifically for the Federal Aviation Administration ("FAA").  She alleges that the first discriminatory act occurred in July, 1998, when she was denied her request for a temporary promotion by her manager, Ernest Landry ("Landry") (see Ex. 3).  Tines Jones had recently created an Individual Development Plan ("IDP"), which included a list of objectives for career development and training to advance knowledge and job responsibilities. (Ex. 1 and 2).  The IDP was signed by both Tines Jones and Landry, and was "approved contingent upon available funding ... and based

on the *needs of the organization* during the developmental time frame. Id (emphasis added). Tines Jones requested the promotion on June 24, 1998, and in another memorandum submitted to Landry on July 16, 1998 (see Ex. 3). The request was denied on July 22, 1998 due to impending "critical staffing shortages" (Ex. 4). Nevertheless, the first meeting Tines Jones had with an EEO Counselor was more than a year later (see. Ex. 12, ¶ 18, EEO Complaint dated July 26, 1999). Tines Jones does not contend that she was unaware of the grievance procedure. She also does not contend that she was previously unaware of the alleged discrimination. The agency was not informed, and therefore had no opportunity to investigate. Tines Jones did not state this claim until one year later, and therefore this matter is untimely under 29 C.F.R. 1614.105.

Further, even if Tines Jones had stated this grievance in a timely manner, Landry denied the promotion request articulating anticipated staffing shortages and organizational needs as the reason for the denial. He provided non-discriminatory reasons in a correspondence to Tines Jones dated July 22, 1998 (see Ex. 4). The request for a temporary promotion came at a time when the personnel office was anticipating the loss of two employees, one to maternity leave, and at a time when there was already a vacancy in the area of work Tines Jones performed. Id. Given the current organizational needs and staff shortages, even Tines Jones agreed with the legitimate non-discriminatory reason provided by Landry. In a memorandum to Nason in October of 1998 related to another project, Tines Jones addressed the recent denial of her request for the temporary promotion, stating that she "can appreciate and understand the reason for the denial" (Ex. 6). Given these considerations, Tines Jones fails to establish a prima facie case for discrimination -- even if her filing had been timely.

**B.    Tines Jones Fails to Establish a Prima Facie Case for Race, Color or National Origin Discrimination.**

**1.    Refusal to Allow Tines Jones to Attend a Conference Does Not Constitute an Adverse Employment Action.**

The second prong of the framework for establishing a prima facie case for discrimination requires that Tines Jones show that "her employer took an adverse employment action against her." Straughn 250 F.3d at 33; See also Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999).  It has been held that "to be adverse, an action must materially change the conditions of the plaintiff's employ." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).  This usually entails that the employer either "takes something of consequence from the employee, say by discharging or demoting her ... or withhold from the employee an accouterment of the employment relationship." Id; See also Hernandez-Torres v. Intercontinental Trading Co., 158 F.3d 43, 47 (1st Cir. 1998) (stating that an adverse employment action "include[s] demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees").  However "the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Blackie 75 F.3d at 725.  Although the Supreme Court recently decided a case regarding what constitutes an "adverse employment action", the new standard is specifically with respect to claims of retaliation.  Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405 (2006).

In February of 1999, Tines Jones became aware of a conference that was going to be held in June (Ex. 12, ¶¶ 13-16).  She asked if she could attend, and the request was denied. Id.  Larry Piro ("Piro"), a white male employee who worked as a Personnel Management Specialist, was

the one person sent to the conference. Id.  Denying a request to attend a conference to which only one employee would be going does not constitute a materially adverse employment action. See De Jesus, 211 Fed.Appx. at 9 (finding no adverse employment action where employee was excluded from a "major managerial decision"); See also Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 26 (1st Cir. 2002) (holding that it is not enough to feel "stigmatized and punished", there must be a "tangible change in working conditions"); Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 169 (3rd Cir. 2001) (finding no adverse employment action where the employee was excluded from committees, hiring decisions, a staff meeting and a supervisor seminar); MacCormack v. Boston Edison Co., 672 N.E.2d 1, 7 (Mass. 1996) (holding that the employee must be a "victim of a *change in working conditions* which materially disadvantaged him") (emphasis added). The refusal to allow the plaintiff to attend did not "materially change the conditions" of her employment. Gu, 312 F.3d at 14.  There were no alterations to her position, and she suffered no financial harm. To be considered materially adverse, the action "must be more disruptive than a mere inconvenience." Marrero, 304 F.3d at 23.  Not attending a conference is not an adverse employment action, and therefore she fails to meet the second prong of the test.

Further, the agency articulated a non-discriminatory reason for sending a different employee.  Tines Jones requested to attend the conference in an effort to broaden her scope of knowledge about the agency.  The agency was financially limited to sending only one employee (Ex. 7).  Piro was sent to the conference because he was working on the benefits issues related to those to be raised at the conference, as was supported in the statements of three supervisors (see Ex. 8, 9 and 10).  Attending the function was materially beneficial to his work, and would have been only developmental for Tines Jones.  Landry chose to send a specific employee after taking into consideration the needs of the organization.

Tines Jones also alleges that she was told by Nason that "there was not (sic) money in the budget to send anyone." Pl. Comp. ¶ 15. There is no evidence in the record to support this claim. Tines Jones cannot just create a factual issue of pretext. The courts have held that "even in a fact-intensive employment discrimination case ... the court will not accept as fact mere allegations lacking evidentiary support." Edwards v. Town of Huntington, 2007 WL 2027913 (E.D.N.Y.) (citing Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir.2001). Tines Jones has not made a prima facie case for racial discrimination.

## VI.        RETALIATORY DISCRIMINATION (Count III)

Under Title VII it is unlawful to "discriminate against ... employees ... because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. 2000-e(3)(a). This unlawful practice is known as retaliation, and requires Tines Jones to meet three elements to establish a prima facie case: (1) that she engaged in protected conduct; (2) that she was then subjected to a materially adverse employment action; and (3) that a causal connection existed between the protected conduct and the adverse action. Burlington Northern & Santa Fe Railway v. White, 126 S.Ct. 2405 (2006); See also Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1ˢᵗ. Cir. 2005) (requirement that the adverse action be "materially adverse" came with the Burlington Northern decision, but the other elements apply). In line with the McDonnell-Douglas framework, the burden would then shift to the employer to articulate a non-discriminatory reason, and then back to Tines Jones to show that the proffered reason was merely a pretext. Id.

In order to satisfy the second element, the employee must show that the challenged action was "materially adverse", meaning that the action "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 126 S.Ct. 2405, 2415 (quoting

Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  This standard however does not "immunize the employee from petty slights or minor annoyances that often take place at work and that all employees experience."  Burlington Northern, 126 S.Ct. at 2415 (internal quotation marks omitted).

The third element requires that the employee show a causal connection, that the employee was "subjected to an adverse employment action *because* of his protected activity." Williams v Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000) (citing Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994)).  The analysis here requires "evidence that ... a retaliatory motive played a part in the adverse employment actions alleged." Williams at 21.  One method would be to show an "inference of causal connection" based on "close temporal proximity between two events." Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998). "Protected conduct *closely* followed by adverse action may justify an inference of retaliatory motive." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 337 (1st Cir. 2005) (citing Hodgens, 144 F.3d at 168) (emphasis added).  However, when using temporal proximity, the courts have held that the events must be "very close." Clark Co. School District v. Breeden, 532 U.S. 268, 273 (2001).

### A.     Cancelled Vacancy Position

#### 1.     Tines Jones Cannot Establish a Prima Facie Case for Retaliation.

In September of 1999, a vacancy was posted for the position of Personnel Management Specialist (Ex. 13).  Tines Jones was interviewed for the position by a panel of her colleagues, and on March 16, 2000, Landry announced that he had decided not to fill the position due to a reorganization of benefits issues (Ex. 15).  There had been another applicant, a white female, who also did not get the position. Tines Jones contends that the cancellation of the position was

in retaliation for her previous EEO complaint.

There is no dispute that Tines Jones meets the first prong of a prima facie case, namely that she engaged in a protected activity when she filed a complaint with an EEO counselor.  She fails, however, to establish a materially adverse employment action.  In a case regarding discriminatory reasons for non-selection for a position, Tines Jones has to show that (1) she is a member of a protected class; (2) that she applied for an open position; (3) that she was not selected; and (4) that the position remained open or was filled by someone else.  Clifford v. Barnhart, 449 F.3d 276, 281 (1st. Cir. 2006); See also Bradley v. England, ---F.Supp.2d— (D.R.I. 2007), 2007 WL 1166046 *6.  The argument that a cancelled vacancy is akin to leaving the position open by not filling it at all has been found to be "simply incorrect." Bradley, 502 F.Supp. 2d 259, 269 (2007) (finding that the position must have remained open *and* the employer must have continued to seek other candidates); see also Patterson v. McLean Credit Union 491 U.S. 164, 186-187 (1989); Gadson v. Concord Hospital, 966 F.2d 32, 34 (1st Cir. 1992) (required that the "position thereafter remained open and the employer continued to search for applicants").  Tines Jones cannot show that the position remained open or was filled by another candidate because the vacancy was cancelled.  No one was hired for the position.

**2.     Tines Jones Cannot Show a Causal Connection between the Complaint and the Act.**

If Tines Jones had established that she was subject to a materially adverse action, she must then show a causal connection between that action and her protected activity.  Courts will look at "whether a reasonable fact finder could find an adequate causal link between these events." Pomales v. Celulares Telefonicas, Inc., 447 F.3d 79, 84-85 (1st. Cir. 2006).  One way to establish this is through "temporal proximity". Id; See also Wyatt v. Boston, 35 F.3d 13, 16 (1st Cir. 1994).  Tines Jones filed an EEO complaint in July of 1999.  She applied for the vacancy in

September of 1999, and the position was cancelled in March of 2000, eight months later. The Supreme Court has ruled that the two events have to be "very close." Clark County School District, 532 U.S. at 271. See Calero-Cerezo, 355 F.3d at 25.

Eight months elapsed between the EEO filing and the announcement that the vacancy was cancelled. This is too large of a time gap to maintain an inference of retaliation. See Colburn, 429 F.3d at 337 (maintaining that a four month "chronology raises no inference of retaliatory motive"); See also Mesnick v General Electric Co., 950 F.2d 816, 828 (1st Cir. 1991) (finding a nine-month gap too tenuous even where the employee was terminated); Altieri v. Albany Public Library, 172 Fed. Appx. 331, 333 (2nd Cir.) (even a three and one-half month interval may not be enough). The Fifth Circuit even went as far as to "*affirmatively reject* the notion that temporal proximity standing alone can be sufficient proof of but for causation." Strong v. Universal HealthCare Systems, L.L.C., 482 F.3d 802 (5th Cir. 2007) (emphasis added). Tines Jones put forth no other causal connection between the two events. Relying on temporal proximity alone, eight months is too long to assume causation, and as such she fails to establish a prima facie case for retaliation.

### 3. The Employer Articulated a Legitimate Non-Discriminatory Reason for Cancelling the Vacancy.

The second part of the McDonnell-Douglas framework requires that the employer articulate a legitimate non-discriminatory reason for the alleged discrimination. Ramirez Rodriguez, 429 F.3d at 84. Landry explained that he cancelled the vacancy for a legitimate reason, namely that there were changes going on in the DOT that might have an effect or even eliminate the position in the future.

On March 16, 2000, the employees in Tines Jones' division had a team meeting, during

which they discussed potential benefits changes.  In her affidavit, Tines Jones expressed concern as to how the potential benefit changes would affect the job vacancy (Ex. 25, p. 5).  Later that day, Landry informed both candidates that the position would not be filled because of these potential benefit changes, and offered to temporarily promote the candidates instead. Id.  In addition to Landry, other employees stated that they had heard discussion of the benefits changes, and that these changes had the potential of affecting the job vacancy (Ex. 16 pp. 3-4; Ex. 17 p. 2; and Ex. 18 p. 3).  Also it was not uncommon for position vacancies to be cancelled or to go unfilled, as evident by four other positions that went unfilled in the previous year (see: Ex. 14).  Here, the DOT articulated a legitimate non-discriminatory reason for cancelling the vacancy.  The cancellation affected both Tines Jones and the other applicant, a white female. Tines Jones has the burden to show that the reason given "was not only a sham, but that its true reason was plaintiff's race or national origin." Rodriguez-Cuervos, 181 F.3d at 19.  Tines Jones does not provide any evidence that the reasons Landry gave were untrue, and her own affidavit shows concern about the long term viability of the position.  Furthermore, the "courts may not sit as super personnel departments, assessing the merits or even the rationality of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825.  As such, this claim should be dismissed.

### B.      The Interim Settlement Agreement

#### 1.      Tines Jones Failed to Exhaust all Administrative Remedies.

Federal employees are required to exhaust all administrative remedies prior to filing suit in federal court.  Woodford v. Ngo, 126 S.Ct. 2378, 2384 (2006); See also Misra v. Smithsonian Astrophysical Observatory, 248 F.3d 37, 39 (1st Cir. 2001).  A settlement agreement that has been voluntarily entered into by both parties in a grievance process is binding on both sides. 29 C.F.R. 1614.504©.  Further, if the complainant "believes that the agency has failed to comply

12

with the terms of a settlement agreement or decision, the complainant *shall* notify the EEO

Director ... within 30 days of when the complainant knew or should have known of the alleged

noncompliance." Id (Emphasis added).  There are specific remedies available, namely that the

complainant can request compliance specifically, or ask that the complaint be "reinstated for

further processing." Id.

  The courts have found that "no one is entitled to judicial relief for a supposed or

threatened injury until the prescribed administrative remedy has been exhausted." Woodford,

126 S.Ct. at 2385 (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)).

The purpose of this is to "protect agency authority" and to "promote efficiency". Id.  The

exhaustion of all administrative remedies is a requirement for Title VII cases, the omission of

which "bars the courthouse doors."  Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st

Cir. 1999) (referring to the one-hundred and eighty day period an aggrieved person has to file).

Further, dismissal has been granted specifically in cases such as this regarding 29 C.F.R.

1614.504, where the complainant did not inform the EEO of an alleged breach of a settlement

agreement.  Eneje v. Ashcroft, 183 F.Supp.2d 931, 933 (E.D.Ky. 2001); Davis v. Secretary of

Treasury, I.R.S., 896 F.Supp 978, 981 (N.D.Cal. 1995).

  Tines Jones and the FAA entered into an "Interim Settlement Agreement" on April 19,

2001, which provided certain measures to be taken, including a temporary promotion.  Tines

Jones alleges that the FAA failed to comply with the agreement in numerous ways, such as

failing to relieve her of staffing assistant duties, failing to meet with her consistently, and failing

to train her consistent with her objectives. Pl. Comp. ¶ 29.  Even though Tines Jones alleges

various counts of noncompliance, she did not notify anyone of the alleged breach, even though

she was required to do so within thirty days of the noncompliance.  29 C.F.R. 1614.504(a);

Owens v. West, 182 F. Supp. 2d 180, 190 (D. Mass. 2001)(if complainant believes an agency

failed to comply with the terms of a settlement, the complainant must notify the EEOC within 30 days of the noncompliance.  In fact, she did not allege noncompliance until she filed another EEO complaint on March 6, 2002, almost a year after the agreement was initiated.  Tines Jones fails to exhaust "the prescribed administrative remedy" as required, and therefore this claim should be dismissed.

> **2.    Tines Jones does not Show a Causal Connection Sufficient to Prove Retaliatory Discrimination**.

There are several different ways to prove retaliatory discrimination, such as showing evidence of differential treatment in the workplace, evidence of comments showing a retaliatory mind set, statistics showing disparate treatment or a showing of temporal proximity between a protected activity and the discriminatory event. <u>Mesnick</u>, 950 F.2d at 828.

Even if Tines Jones had exhausted all administrative remedies, she fails to establish a casual connection sufficient to prove retaliation.  She does not offer any showing of differential treatment in the workplace.  Further, she does not offer evidence of any comments or actions that imply a retaliatory mind set on the part of her colleagues and supervisors.  Statistical evidence would not be applicable here, and even still, was not offered.

Tines Jones filed two EEO complaints before the settlement agreement was created, one in July of 1999, and the other in May of 2000 (Ex. 12, ¶¶ 18 and 24).  Tines Jones alleges in March of 2002 that there was noncompliance with the agreement, and that the reason for the noncompliance was retaliatory discrimination.  Almost two years passed in between the "protected activity", filing an EEO complaint, and the "discriminatory behavior."  The Supreme Court has held that temporal proximity only gives way to a causal connection where the two events are "very close". <u>Clark County School District</u>, 532 U.S. at 271.  Two years passed in between the EEO complaint and the allegation of settlement agreement noncompliance.  Nine

months has been found too tenuous to support the inference of retaliation. <u>Mesnick</u>, 950 F.2d at 828.

Tines Jones did not exhaust administrative remedies.  She did not prove differential treatment, and cannot show temporal proximity, and thus cannot establish a causal connection. For these reasons, this claim should be dismissed.

## VII.   <u>VIOLATION OF THE REHABILITATION ACT OF 1973 (Count II)</u>

The Rehabilitation Act protects federal employees from discrimination where the employee is disabled within the meaning of the statute.  In addition, the statute "impose[s] an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee." <u>Calero-Cerezo v. U.S. Det. Of Justice</u>, 355 F.3d 6, 20 (1st Cir. 2004).  To state a claim for failure to accommodate under this Act, the plaintiff has to establish three elements: "(1) that she suffered a "disability" within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for her disability." <u>Id</u>. at 20; <u>See</u> <u>also</u> <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 264 (1st Cir. 1999).

### A.   **Tines Jones Cannot Show that Her Impairment Substantially Limited a Major Life Activity.**

The statutory definition of a disability requires that the person have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.C.S. 12102(2)(A). Under this standard, the person must have a physical or mental condition that constitutes an "impairment", and the impairment must substantially limit a "major life activity".  <u>Sutton v. United Air Lines Inc.</u>, 527 U.S. 471, 491 (1999); <u>Toyota Motor Mfg., Ky.,</u>

Inc. v. Williams, 534 U.S. 184, 194 (2002); See also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002).

Depression has been recognized as a mental impairment that, in some circumstances, qualifies as a disability. Calero-Cerezo, 355 F.3d at 20. See also Fontan, 2006 WL 1663548 *8. While depression has been recognized, the courts have thus far "declined to decide whether an anxiety disorder may constitute an impairment." Boutin v. Home Deport U.S.A., 490 F.Supp 2d 98, 104 (Mass. 2007); See also Carroll 294 F.3d at 239. According to the plaintiff's psychiatrist, Dr. Elizabeth Blencowe, M.D. ("Dr. Blencowe"), Tines Jones was being treated for panic disorder and depression (Ex. 19). The treating psychotherapist Jessica Schwartz stated that Tines Jones "presented with a Generalized Anxiety Disorder, with acute panic attacks and depressive symptoms" (Ex. 20). However, here it need not be decided whether her condition qualifies as an impairment for the purposes of this analysis, because Tines Jones fails to show that it "affected a major life activity".

A major life activity is an activity of central importance to people's daily lives. Toyota Motor Mfg., Ky., Inc., 534 U.S. at 197 (internal quotations omitted). Tines Jones made no claim that her impairment substantially affected a major life activity. In fact when the EEO complaint was originally investigated, Tines Jones stated in her own affidavit that she "[did] not know how this limits a major life activity" (Ex. 21). This statement alone supports the idea that there was no such effect.

In January of 2003, Tines Jones requested that she be transferred to a Nashua, New Hampshire office of the FAA as a reasonable accommodation for her impairment (Ex. 22). In a letter dated January 15, 2003, Landry acknowledged her request and on January 31, 2003, asked that Tines Jones have her medical provider submit documentation about how her mental

impairment limited her work activities and interfered with her ability to interact with others (Ex. 23).  On February 21, 2003, Dr. Blencowe sent a letter to Landry responding to his "request for more information about the current impact [of Tines Jones' symptoms] on her functioning" (Ex. 24).  The letter stated that Tines Jones was cleared to "return to work and perform all of her assigned duties." Id. On March 13, 2003, Landry sent a memorandum to Tines Jones denying her request for relocation based on the determination that she did not "have a work related disability and that reasonable accommodation [was therefore] not necessary" (Ex. 5).  Landry made this decision relying on Dr. Blencowe's assessment that Tines Jones was clear to return to work in full capacity. Id.  Tines Jones has made no showing that her impairment substantially affected a major life activity, and as such fails to meet the standards needed for her claim under the Rehabilitation Act.

### B.     Tines Jones Fails to Prove That She was Restricted in Her Ability to Perform one Single Job or a Class of Jobs.

Tines Jones returned to work after the relocation denial, only to allege that her disability once again interfered when she suffered a panic attack. While Tines Jones never claims outright that her impairment substantially affects a specific major life activity, and in her affidavit claims she "doesn't know", it would appear that the impairment allegedly interferes with the ability to work.  The Supreme Court has declined to address whether working constitutes a "major life activity." Carroll 294 F.3d at 239 FN7.  Assuming arguendo that working is a major life activity, the courts have held that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Lebron-Torres v. Whitehall Laboratories, 251 F.3d at 236, 240 (1st Cir. 2001) (quoting 29 C.F.R. § 1630.2(j)(3)(I)); See also Carroll 294 F.3d at 240.  Where working is the activity at issue, courts consider whether "[the]

plaintiff can show that he or she is significantly restricted in his or her ability to perform a class

of jobs or a broad range of jobs in various classes." Id. at 240, (internal quotation marks omitted)

(citing Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1ˢᵗ Cir. 2001).

Tines Jones sent a letter requesting that she be relocated to New Hampshire "to execute [her] job

responsibilities" (Ex. 22). This implies that she wanted to continue the same job in a different

location. This illustrates that Tines Jones was capable of performing her then current job

responsibilities. Tines Jones therefore fails to establish that her impairment restricted her ability

to do either a "single, particular job" or a "class of jobs," and her claim for failing to

accommodate a disability should be dismissed.

### C.    Tines Jones Fails to Prove That She was Denied a Reasonable Accommodation.

Finally, Tines Jones fails to show that she was denied a "reasonable accommodation".

Under the Rehabilitation Act, "an employer who knows of a disability yet fails to make

reasonable accommodations violates the statute, no matter what its intent, unless it can show that

the proposed accommodations would create undue hardship for its business." Higgins 194 F.3d

at 264. See 42 U.S.C. 12112(b)(5)(A). Some examples of reasonable accommodations include

"job restructuring, part-time or modified work schedules, [or] reassignment to a *vacant*

position." Calero-Cerezo 355 F.3d at 23, (emphasis added). The employee should make a

specific accommodation proposal, and it must be "feasible for the employer under the

circumstances." Id. (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1ˢᵗ Cir. 1992)).

An employer is not obligated to create a new job for the plaintiff. Mercado Rivera v. Loctite

Puerto Rico, Inc., 222 F. Supp.2d 136, 141 (D. Puerto Rico 2002).

The FAA submitted copies of all vacancies in Personnel positions from January 8, 2003

through October 22, 2003 (Ex. 14). There were no available personnel positions in New

Hampshire during that time period, which is the classification of jobs that Tines Jones would work within. Id. Therefore her specific request was not feasible at the time, and as such, not a reasonable accommodation to make. The plaintiff alleged that her levels of stress and anxiety were heightened when she worked for Susan Nason. The plaintiff fails to provide this Court with evidence that a major life activity was effected by her alleged anxiety and depression exacerbated by working for Nason. Just because the plaintiff cannot work for the supervisor does not mean she suffers from a major life activity.

In Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir 1996), a former employee sued the defendant employer claiming that her supervisor caused her anxiety and depression by yelling at her during job performance reviews. The employee claimed that the defendant did not reasonably accommodate her by placing her under a different supervisor. The Court entered summary judgment for the defendant employer. The Court held that "the major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a supervisor because of anxiety and stress related to his review of her job performance." Id. at 524. Because the plaintiff claims she can do the same job under a different supervisor, "she can do the job, and does not qualify under the ADA." Id. at 525. The ADA does not require an employer to transfer an employee to work for a different supervisor or transfer the supervisor as that decision remains with the employer. Id. at 526.[1]

In Ashton v. American Tel. & Tel. Co., 225 Fed. Appx. 61 (3d Cir. 2007) the plaintiff, allegedly suffering from stress and anxiety disorder, brought action against former employer alleging discrimination under the ADA. The alleged stress and anxiety came from a supervisor

---

[1]    The definition of "disability" under the ADA applies equally to define "disability" under the Rehabilitation Act. Americans with Disabilities Act, §2 et. seq., 42 U.S.C.A. §12101 et. seq.; Rehabilitation Act of 1973, §2 et. seq., as amended, 29 U.S.C.A. §701 et. seq. Healy v. Henderson, 275 F. Supp. 2d 40, 45 (D. Mass. 2003).

that complained about the amount of time the plaintiff was taking for jury duty. After the plaintiff was diagnosed by physicians, the supervisor initially accommodated the plaintiff by letting her work at home. A few months later, the supervisor requested that the plaintiff return to work and the Court granted summary judgment to defendant employer. The Court held that the plaintiff cannot show that work ability is substantially limited if she is able to work at home but cannot work at employer's office because supervisor's treatment of her causes stress and anxiety. Id. at 67.

Lastly, in Fricke v. E.I. Dupont Co., 219 Fed. Appx. 384 (7th Cir 2007) a former employee brought action against her employer alleging employment discrimination based on age and disability. The Court granted summary judgment to defendant employer, and held that "personality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a "disability" or inability to work for purposes of the ADA." Id. at 389.

Tines Jones can not make a showing that her ability to work was substantially limited by her impairment. She requested a new location because she had personality conflicts with her supervisor, Susan Nason. This is illustrated in various ways, beginning with a request in 1997 from Tines Jones for a new work space because Susan Nason "was constantly watching and looking into [her] workspace" (Ex. 26). This does not qualify her as disabled or prove that a major life activity was substantially limited, and it certainly does not show a restriction to work a class of jobs. Based on the fact that the defendant did not have another location suitable for the plaintiff to work in her capacity in personnel, the defendant was not obligated to create a new position for the plaintiff, or to relocate her position to a location without supervision, because the plaintiff allegedly had a personality conflict with her supervisor. Therefore this claim should be dismissed.

## VIII.  **Conclusion**

WHEREFORE, based on the foregoing arguments, in Count I (Race, Color and National

Origin) Tines Jones failed to exhaust her administrative remedies, failed to allege an adverse

employment action, and the defendant provided legitimate non-discriminatory reasons for his

actions.  In Count III (Retaliation)  Tines Jones again failed to exhaust her administrative

remedies regarding the interim settlement agreement, cannot show a causal connection between

her EEO complaints and the alleged retaliatory acts, and failed to establish a prima facie case for

retaliation when a posted position of Personnel Management Specialist was cancelled.  Finally,

Tines Jones failed to show how her anxiety and stress substantially limited a major life activity

and thus is not an otherwise qualified individual under the Rehabilitation Act.

Respectfully submitted,

NORMAN Y. MINETA,
SECRETARY OF THE DEPARTMENT
OF TRANSPORTATION,

By his attorneys,
MICHAEL J. SULLIVAN
United States Attorney

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02465
Dated: April 1, 2008                      (617) 748-3284

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on April 1, 2008.

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney