UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10082-EFH

---

**YVONNE L. TINES JONES,**
*Plaintiff*

v.

**NORMAN Y. MINETA, Secretary**
**U.S. DEPARTMENT OF TRANSPORTATION**
*Defendant*

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Yvonne L. Tines Jones, through counsel, hereby opposes the Motion for Summary Judgment filed in this action by Defendant. As grounds for this Opposition, Plaintiff relies upon this Memorandum, as well as the Local Rule 56.1 Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried, which has been filed simultaneously with this Opposition, and the documents attached thereto.

## I. SUMMARY OF ARGUMENT

In her Verified Complaint in this action, Plaintiff Yvonne Tines Jones has alleged that over a number of years, she was subjected to discriminatory, disparate treatment at her workplace by her supervisors, on the basis of her race, in retaliation against her for having filed Charges of Discrimination, and because she had a disability or was regarded by her employer as having a disability. The specific various incidents in which she claims to have been treated in a discriminatory manner, relate to not being given a temporary promotion, not being sent for a particular training, having a job vacancy she applied for cancelled, the violation of an Interim Settlement Agreement she entered into with her employer, and the refusal to allow Ms. Tines Jones to work from a different

work location than her location in Burlington, Massachusetts (which had been requested as an accommodation to Ms. Tines Jones' disability). It is also clear from the facts developed during discovery in this action, that Ms. Tines Jones was subjected to harassment by her immediate supervisor, Susan Nason, due to a real or perceived disability.[1]

In summary, Plaintiff asserts that Summary Judgment in this action must be denied for the following reasons:

**A. RACE**

Defendant argues that the denial of training to Plaintiff did not constitute an adverse action. Under the principles set forth in Burlington Northern vs. White, 126 S. Ct. 2405 (2006), an action such as the denial of training can (depending upon the circumstances) be an adequate basis upon which to base a charge of discrimination. Additionally, there is a genuine issue of material fact in dispute with regard to the issue of the denial of training, specifically, whether or not Ms. Tines Jones was informed that funding was not available for the training prior to being informed that another employee would be attending the training.

Defendant's Motion does not address has not address the race discrimination claim in relation to the failure to transfer Ms. Tines Jones or allow her to work from a different work location.

**B. RETALIATION.**

Defendant claims that the retaliation claims asserted by Ms. Tines Jones must be dismissed as Plaintiff has not shown a causal connection between her protected activity

---

[1] Plaintiff acknowledges that it is not specifically pleaded in the Verified Complaint in this action that she was subjected to a harassing environment due to a real or perceived disability. However, as the Verified Complaint in this action states that Plaintiff was "discriminated against" on the basis of her handicap, Verified Complaint ¶1, and as such a claim is clearly evident from the factual allegations of the Verified Complaint as well as the discovery in this action, the Court should treat the Verified Complaint as also alleging harassment due to a real or perceived disability. To the extent deemed necessary, Plaintiff requests that she be allowed to amend her complaint to specifically allege such harassment.

and the cancellation and additionally, allegedly there was a legitimate reason to cancel the vacancy. This argument is incorrect as the pretextual information provided to Plaintiff in relation to not sending her for training is adequate to establish pretext in relation to the matter of cancelled vacancy as well. Furthermore, in light of the totality of the circumstances regarding the treatment of Ms. Tines Jones, the cancellation of the vacancy may be viewed as pretextual.

With regard to the violation of the Interim Settlement Agreement, Plaintiff asserts that the prior pretextual actions against her as well as the totality of the circumstances are adequate to find that the supposedly legitimate reason for the Defendants' actions with regard to the Interim Settlement Agreement are merely a pretext. With regard to exhaustion, Plaintiff notes that she attempted to bring this matter to the attention of her supervisor in a timely manner, that he did not respond, and that as administrative exhaustion requirements are not jurisdictional, her failure to exhaust her remedies in this regard should be excused.

## C. DISABILITY

Plaintiff has adequately alleged and proved that her disability substantially limits a major life activity (working), and that her disability prevented her from performing either an entire class of jobs or a broad range of jobs in various classes. Finally, there is a genuine issue of material fact in dispute as to whether Plaintiff would have been able to perform her job from a different work location. Defendant has not introduced any evidence in its Motion for Summary Judgment on this issue.

## D. HARASSMENT DUE TO DISABILITY

Based upon the evidence obtained during discovery, it is clear that Ms. Tines Jones' supervisors, and in particular, Ms. Nason, regarded Ms. Tines Jones as suffering from a disability, and harassed her due to that belief.

## II. FACTUAL BACKGROUND

Plaintiff sets forth below additional facts regarding this matter which are not set forth in Defendant's Motion for Summary Judgment.

On February 11, 1999 Ms. Tines Jones learned of a federal benefits conference entitled "Benefits in the New Millennium" to be held on June 8 through June 11, 1999 in Washington, DC. Rule 56.1 Statement of Facts ("SF") at par. 1. The Conference had always been referred to as "training." SF at par. 1. Ms. Tines Jones told her supervisor, Susan Nason (a white female) about the Conference and asked if she could attend the training since she had developed an "individual development plan." SF at 2.

Supervisor Nason told Ms. Tines that there was not enough money in the office budget to send any employee to the Conference. SF at par. 3. Another manager in the office, Mr. Piro, also informed Ms. Tines Jones that there was not enough money in the budget to send anyone to the Conference. SF at par. 3.

Despite the statements made to Ms. Tines Jones that there was not enough money to send anyone to the Conference, Defendant sent a coworker of Ms. Tines Jones, Mr. Piro (a white male) to the Conference. SF at par. 4. Prior to being sent to this particular Conference, Mr. Piro had never attended any of the telephone conferences regarding benefits. SF at par. 4. When Ms. Tines Jones asked Mr. Piro how he felt about attending the training, he said he was only interested in the retirement portion, because he would be retiring soon and that he "was a placebo." Id.

On September 10, 1999, Defendant posted a vacancy for the position of Personnel Management Specialist. SF at par. 6. On September 20, 1999, Ms. Tines Jones applied for the position. On September 28, 1999, Ms. Tines Jones was interviewed for the

vacancy. SF at par. 7. On March 16, 2000, Supervisor Landry informed Ms. Tines Jones that he had decided not to fill the vacancy. SF at par. 8.

On April 19, 2001, the parties entered into an "Interim Settlement Agreement" pursuant to which Defendant agreed (among other things) to temporarily promote Ms. Tines Jones to the position of Personnel Management Specialist for a period of at least 9 months in return for Ms. Tines Jones holding her Complaint in abeyance. SF at par. 10.

On February 6, 2002, Ms. Tines Jones' physician Dr. Blencowe requested a 30-day medical leave of absence for Ms. Tines Jones due to severe stress. SF at par. 11. On February 10, 2002, Ms. Tines Jones started a two-month leave of absence. SF at par. 12. On March 1, 2002, Dr. Blencowe requested an extension of Ms. Tines Jones' leave of absence. SF at par 13.

On March 6, 2002, Ms. Tines Jones filed a Complaint of Discrimination against the Agency alleging that the Agency had failed to comply with the Interim Settlement Agreement. SF at par. 14. Prior to filing the Complaint of Discrimination on March 6, 2002, Ms. Tines Jones had contacted Supervisor Landry and informed him that in her belief the parties should return to the mediator. SF at par. 15. In response, Mr. Landry wrote to Plaintiff that returning to the mediator might be premature and unnecessary. Id.

In April 2002, Ms. Tines Jones returned to work under a considerable amount of stress and anxiety. SF at par. 16.

In August, 2002, Supervisor Nason aggravated Ms. Tines Jones' stress and anxiety by denying that she (Ms. Nason) ever received medical documentation of Ms. Tines Jones' need for a flex-time accommodation. As a result of this, Ms. Tines Jones had a panic attack and overdosed on panic attack medication in front of Ms. Nason, was immediately taken to the hospital and was placed on a suicide watch. SF at par. 17. After overdosing on the medication on August 6, 2002, due to stress in meeting with Ms. Nason, Ms. Tines Jones had a panic attack on August 20, 2002, when her supervisor, Ms. Nason insisted

upon meeting with her after she (Ms. Nason) had been advised by the Region's Employee Assistance Manager, Mr. Charlie Pagnini, that the meeting should be rescheduled to another date. SF at par. 17. Ms. Tines Jones had another panic attack after returning to work in March 2003, after her higher level supervisor Mr. Landry had forced her to return to work for Ms. Nason (after Ms. Tines Jones had provided medical documentation indicating that a return to the work site and supervisor would be detrimental to her health). Id.

On September 20, 2002, Ms. Tines Jones provided Supervisor Nason with a letter from her doctor, Dr. Blencowe, advising Ms. Nason of Ms. Tines Jones' disability, depression and panic disorder. SF at par. 18.

On December 17, 2002, Dr. Blencowe advised Supervisor Landry of Ms. Tines Jones' disability and requested a reasonable accommodation. Specifically, Dr. Blencowe advised "I recommend strongly that when Ms. Tines Jones returns on 1-6-03 that she be assigned to a different job site and not return to the FAA Regional Office in Burlington, MA. Ms. Tines Jones is being treated for panic disorder and depression, which is exacerbated markedly by an adverse work relationship at the FAA Regional Office in Burlington, MA. Therefore, I hope that you will grant Ms. Tines Jones' request to be transferred to a different work site." SF at par. 19. On January 10, 2003, Plaintiff requested reassignment to a different work location as a reasonable accommodation to her disability. SF at 20.

On January 15, 2003, Supervisor Landry acknowledged receiving Plaintiff's request for reassignment as a reasonable accommodation. SF at par. 20. On March 13, 2003, her request for transfer was denied. SF at par. 21.

The medical condition Ms. Tines Jones suffered from had been diagnosed by her psychiatrist as depression and panic attacks. SF at par. 22. Ms. Tines Jones provided notes from her psychiatrist and her therapist to Ms. Nason dated September 20, 2002, September 25, 2002, November 22, 2002, December 17, 2002, and December 30, 2002. Id.

There is an Air Traffic Division Personnel Office in Nashua New Hampshire. Ms. Tines Jones could access the same information there that the FAA had in its facility in Burlington Massachusetts. The information used in Burlington was from an online system from Oklahoma. SF at par. 23. A transfer to the Nashua New Hampshire facility would have allowed Ms. Tines Jones to continue her work as a Personnel Assistant and not work directly with Ms. Nason. Id.

After her leave of absence in the Spring of 2002, on the second day back to work Ms. Nason told Ms. Tines Jones that she was going to give her an oral admonishment and gave her a memo to document that she had presented Ms. Tines Jones with an oral admonishment. Id. On Ms. Tines Jones' arrival back to the office after being absent for two weeks in August, on August 19, 2002, Ms. Nason left a note on Ms. Tines Jones' desk regarding Ms. Tines Jones' departure time and her medical documentation.

On or about August 27, 2002, Supervisor Nason gave Ms. Tines Jones a letter regarding Ms. Tines Jones medical condition. SF at par. 26. Among other things, the letter stated the following:

"The purpose of this letter is to notify you of the requirements that must be met before you can return to a work status at the FAA. On August 6, 2002 you became very agitated, left work, were admitted to Lahey Clinic and then were out of work through August 16. …
You returned to work on August 19, but based on the behaviors exhibited on August 19 and 20, cumulating with your collapse on August 20 in my office, it is clear that you were, in fact, not ready to return to work at that time. …
Because of the events that occurred after your return to work on August 19, detailed medical documentation must be provided to me before you may return to work after your current absence. This information is necessary in order to ensure that you are actually ready and able to return, perform the full range of duties and responsibilities of your position including meeting with me as your supervisor when requested, and exhibit behaviors that are appropriate in a workplace without endangering the health or safety of yourself or others.
The documentation must include detailed information as to diagnosis and prognosis, including what triggers the type of outbursts and agitations you have exhibited in the workplace, potential danger to yourself and coworkers, status of this condition (i.e. is it worsening or stable), current and planned future treatment, and whether the effect can be mitigated by workplace changes. … You will be

placed on administrative leave, beginning August 29, until such time as the documentation is received, reviewed and a determination is made on your readiness to return to the workplace. I may call upon the Regional Flight Surgeon to assist in reviewing this information. …"

Ms. Tines Jones' supervisor, Gina Razel, felt that Ms. Tines Jones conduct and behavior was often unpredictable. Ms. Tines Jones often rocked back and forth. Coworkers found this off putting. Ms. Razel spoke to Ms. Tines Jones about this. SF at par. 27. Ms. Razel told Ms. Tines Jones that coworkers were not comfortable going into Ms. Tines Jones' office due to her behavior. Ms. Razel suggested that Ms. Tines Jones go to the Employee Assistance Program. SF at par. 27.

Ms. Tines Jones' supervisor, Susan Nason, discussed Ms. Tines Jones' diagnosis with Supervisor Razel and Supervisor Landry. SF at par. 28. Ms. Nason and other employees in the office felt that Ms. Tines Jones' behavior was frightening. SF at par. 29. Ms. Nason was involved in responding to Ms. Tines Jones' request for a transfer to an office other than Burlington Massachusetts and discussed this matter with Mr. Landry and Ms. Razel. SF at par. 30. Ms. Nason left the August 27, 2002 letter for Ms. Tines Jones. SF at par. 31. Ms. Nason believed that Ms. Tines Jones did suffer from what her doctors' had said, namely depression, anxiety and panic attacks. SF at par. 32.

Mr. Landry supervised Ms. Nason and Ms. Razel. SF at par. 33. According to Mr. Landry, Ms. Tines Jones would rock in her chair and would hum to herself. SF at par. 34. Mr. Landry assumes that as a result of not getting along with Supervisor Nason, Ms. Tines Jones' depression, anxiety and panic attacks got worse. SF at par. 35. As early as April, 2002, Mr. Landry believed that Ms. Tines Jones suffered from anxiety and depression. SF at par. 36. In relation to the letter from Supervisor Nason to Ms. Tines Jones dated August 27, 2002, Mr. Landry was consulted in relation to the preparation of the letter. SF at par. 37.

When Charles Pagnini, the Employee Assistance Program Counselor met with Ms. Tines Jones, she had anxiety and stress. Mr. Paganini recommended that Ms. Tines Jones get

professional treatment. SF at par. 38. Ms. Tines Jones indicated to Mr. Pagnini that Ms. Nason was being unfair with her, and that Ms. Nason mistreated her, in relation to work assignments. SF at par. 39. Mr. Paganini felt that Ms. Tines Jones had behavioral problems that got in the way of her doing her work. SF at par. 40.

## III. ARGUMENT

### **A. THE PENDING SUMMARY JUDGMENT MOTION DOES NOT DISPOSE OF THIS CASE.**

Defendant's Motion for Summary Judgment is divided into three (3) sections, namely, the claims regarding racial discrimination, the claims regarding illegal retaliation and the claims regarding disability discrimination. Plaintiff has claimed that she was discriminated or retaliated against in relation to a variety of matters at work such as the failure to send her to a particular training session, the cancellation of a promotion vacancy, the violation of an Interim Settlement Agreement and the failure to grant her request to be either transferred to a different work location or a different position in a different location.

Although the Motion for Summary Judgment deals with most of these specific incidents of alleged discrimination or retaliation, it does not deal with all of them. In particular, the refusal of Defendant to transfer Ms. Tines Jones to a different work location or a different position was alleged by Ms. Tines Jones in her administrative Charges of Discrimination as well as in the Verified Complaint in this action, to constitute race discrimination, retaliation, and disability discrimination. However, although the Motion asserts that the failure to transfer Ms. Tines Jones was not disability discrimination **it does not discuss at all, whether this failure constituted race discrimination or illegal retaliation.** These matters are simply not raised in Defendant's Brief.

Accordingly, even should the Court grant the Motion for Summary Judgment, the Counts in the Verified Complaint for race discrimination in relation to the failure to transfer Ms. Tines Jones, and for illegal retaliation due to the failure to transfer Ms. Tines Jones, survive the Motion for Summary Judgment and must proceed to trial.

**B. RACE DISCRIMINATION .**

In that portion of Defendants' Brief which asserts that Summary Judgment should be granted in favor of Defendant in relation to the race discrimination claims set forth by Ms. Tines Jones, there are only two grounds set forth for Defendants' argument. The first is that the claim that Ms. Tines Jones was not granted a temporary promotion in 1998 is untimely.

The second ground is that in relation to the claim that Plaintiff was not sent for training (what Defendant refers to being sent to a Conference) the failure to provide the training does not amount to an adverse action and therefore Plaintiff has not stated a *prima facie case* of race discrimination. Defendant is wrong.

In the case of Burlington Northern & Santa Fe Railway Company v. White, 126 S.Ct. 2405, 2415 (2006), the Supreme Court held that in a retaliation case, in order for a particular employment action alleged to have been retaliatory to be actionable, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Surely, the denial of training for engaging in protected activity will dissuade a reasonable employee from invoking his or her rights. There is no reason this standard should not be applied to the non-retaliation claims in this case, as well as to the retaliation claims.

The cases cited by Defendant at page 6 of its Brief refer to adverse employment actions being matters which materially change the conditions of a Plaintiff's employment, or instances when an employer takes something of consequence from an employee, or withholds something related to the employment relationship from the employee or engages in other negative actions.

As is stated by Ms. Tines Jones in her Affidavit appended to the Rule 56.1 Statement in this action, the "Conference" which she was not sent to was referred to by her managers

and coworkers as "training." Ms. Tines Jones was denied training by her employer, which training would have allowed her to advance within her career.

Being denied training which would have allowed her to advance in her career was materially disadvantageous to Ms. Tines Jones, and was indeed "something of consequence" which she was being denied.

The logical extension of Defendant's argument is that it does not constitute racial discrimination to deny training to employees based upon their race. Obviously, this conclusion is not correct. The denial of training to Ms. Tines Jones is adequate to constitute an adverse action upon which a claim of racial discrimination may be based.

As the only basis for the denial of this aspect of Ms. Tines Jones' claim is that an adverse action did not occur, Summary Judgment must be denied as to this aspect of Ms. Tines Jones' race discrimination claims.

To the extent it can be inferred from Defendants' Brief that Defendants are claiming that there was a legitimate, non-discriminatory reason for declining to send Ms. Tines Jones to training, there exists a genuine issue of material fact which prevents Summary Judgment from being granted on this issue.

Specifically, Ms. Tines Jones was informed by both her supervisor, Ms. Nason as well as by a manager, Mr. Piro, that she would not be able to attend the training because there was no money available to send <u>any employee.</u> After Ms. Tines Jones was informed of this, a white male was sent to the training. This white male indicated to Ms. Tines Jones that he was not really interested in the training. <u>Therefore, the statement made to Ms. Tines Jones that there was no money available to send anyone to the training was merely a pretext for discrimination.</u> To the extent that Defendant claims either that Ms. Tines Jones was not told this information or that there is a question whether or not there was indeed money to send Ms. Tines Jones to the training, a genuine issue of material fact has been created which prevents Summary Judgment from being granted on this issue.

In this regard, at page 8 of Defendant's Brief, Defendant states that Ms. Tines Jones claims on this issue are not supported by evidence in the record and that this is a mere allegation lacking evidentiary support. That is not correct. Ms. Tines Jones has sworn to the truthfulness of these facts under oath. That constitutes adequate evidence in the record to support her claim and to create a dispute as to a material fact.

For all of the foregoing reasons, the claim of race discrimination in relation to the refusal to send Ms. Tines Jones to training must be denied.[2]

## C. DISABILITY DISCRIMINATION

Defendant has claimed in its Brief that Plaintiff was not discriminated against due to her disability as she did not adequately prove that her disability impacted a major life function, she did not prove that she could not perform an entire class of jobs or a broad range of jobs in various classes, and she was not denied a reasonable accommodation. All of these claims are incorrect.

As is set forth in the factual section of this Opposition, between April of 2002 and late December of 2002, it is clear that Ms. Tines Jones suffered from severe depression, anxiety and panic attacks which interfered with her ability to engage in the major life activity of working.

Ms. Tines Jones' supervisors have all acknowledged that Ms. Tines Jones engaged in odd behavior on the job including rocking back and forth and humming. On one occasion in August, 2002, when dealing with her supervisor, Ms. Tines Jones was so stressed that she took an overdose of anti-anxiety medications. On another occasion, she became so stressed that she had a severe anxiety attack (resembling a seizure) which caused her to

[2] As was discussed earlier in this Opposition, Ms. Tines Jones has also claimed that the refusal to transfer her to a different work place or a different position constituted race discrimination. As Defendant has not raised that issue in its Brief, the issue of whether the failure to transfer Ms. Tines Jones constituted race discrimination must also survive Summary Judgment.

be hospitalized. On a third occasion, when she returned to work in March of 2003, she had another severe panic attack.

Ms. Nason has testified that Ms. Tines Jones' coworkers were frightened by her behavior and were put off by her behavior. Her supervisor Ms. Razel suggested that Ms. Tines Jones seek help from the Employee Assistance Program. As early as April of 2002, Supervisor Landry believed Ms. Tines Jones suffered from anxiety and depression. Employee Assistance Program Director Mr. Paganini testified that in his opinion, Ms. Tines Jones suffered from anxiety and stress which did indeed interfere with her ability to do her job.

On August 27, 2002, Ms. Tines Jones' supervisor, Ms. Nason, wrote Ms. Tines Jones a letter stating that detailed medical information would have to be provided by Ms. Tines Jones before Ms. Tines Jones would be allowed to return to work. In that letter, Ms. Nason questioned not only whether Ms. Tines Jones could perform the full range of the duties and responsibilities of her job, but whether Ms. Tines Jones could behave appropriately in a workplace without endangering the health and safety of herself and others. Among the information Ms. Nason requested was information regarding "what triggers the type of outbursts and agitation you have exhibited in the workplace, potential danger to yourself and coworkers, status of this condition…current and planned future treatment, and whether the effects can be mitigated by workplace changes." Ms. Nason's letter was based upon her observations of Ms. Tines Jones in the workplace.

By this point in time, Ms. Tines Jones' supervisors had also received numerous letters from Ms. Tines Jones' caregivers stating that Ms. Tines Jones suffered from anxiety and depression and that as a result, she was unable to work.

Ms. Tines Jones made her initial transfer request in January of 2003. Her request was not acted upon (when it was denied) until March of 2003. Until at least the end of February of 2003, Defendant had more than adequate information to believe and to find that Ms. Tines Jones suffered from a disability which prevented her from engaging in the major

life activity of work. Accordingly, Ms. Tines Jones has introduced adequate evidence to show that at the time her request was denied she had provided adequate evidence to show that she suffered from a disability which prevented her from engaging in a major life activity.

The sole piece of evidence Defendant relies upon to claim that Ms. Tines Jones was not disabled, is a letter dated February 21, 2003 from Ms. Tines Jones' therapist, Dr. Blencowe. In that letter, Dr. Blencowe did indeed state that Ms. Tines Jones was able to "return to work and perform all of her assigned duties at her workplace." However, Dr. Blencowe also indicated that Ms. Tines Jones hoped to be reassigned to a different worksite, that her symptoms were much improved when she was not immediately involved with her previous supervisor, and that Ms. Tines Jones would remain in out-patient psychiatric care with psychotherapy and medications.

Partly as a result of this letter, Ms. Tines Jones returned to work on March 17, 2003, and was required to once again be supervised by Ms. Nason. Almost immediately, Ms. Tines Jones had another one of her seizure like panic attacks and did not work again.

The February 21, 2003 letter, standing alone, is inadequate (in light of all of the contrary evidence referred to above) to defeat the claim that Ms. Tines Jones adequately proved she was prevented from engaging in a major life activity.

In any event, Defendants' actions during January, 2003 and most of February of 2003 (before Defendant ever received the February 21, 2003 letter), in denying Ms. Tines Jones the accommodation she requested, and its actions after March 17, 2003 in denying Ms. Tines Jones the accommodation she requested, constitute illegal discrimination in relation to a disability for which Ms. Tines Jones adequately showed she was prevented from engaging in the major life activity of work.

Defendants' next argument with regard to disability is that Ms. Tines Jones has not adequately shown that she could not perform an entire class of jobs or a broad range of jobs in various classes due to her disability.

Based upon the evidence set forth above, specifically Ms. Tines Jones' behavior in the office from April, 2002 through March, 2003, the reports of her caregivers and the observations of her supervisors, it is clear that Ms. Tines Jones' depression, anxiety and panic attacks prevented her from working in any office setting during that time period. She has adequately proved that she could not perform an entire class of jobs or a broad range of jobs within a particular class. As such, her condition qualifies as a disability.

In this regard, it must be noted that Ms. Tines Jones' disability was not simply an inability to get along with her supervisor due to personality conflicts. Rather, Ms. Tines Jones' disability was severe depression, severe panic attacks, and severe anxiety. These conditions were exacerbated by the nature of the relationship Ms. Tines Jones had with her supervisor.

What is clear is that in the second half of 2002 and the first quarter of 2003, Ms. Tines Jones suffered from psychiatric conditions which made her unable to work, and prevented her from performing a broad range of jobs. Whether those psychiatric conditions were caused by the relationship Ms. Tines Jones had with her supervisor or by matters unrelated to her workplace is irrelevant. The fact is that Ms. Tines Jones was a severely depressed individual who was not able to work. As such, she is not disqualified from the protections of the Rehabilitation Act. The question before the Court is thus not whether Ms. Tines Jones was a qualified handicapped individual, but rather whether the accommodation she requested was a reasonable one and whether it was acted upon properly.

The third basis upon which Defendants claim that Plaintiff was not discriminated against due to her disability is the claim that the accommodation Ms. Tines Jones requested,

being transferred to a position or workplace outside of the Burlington Massachusetts office of the FAA, was a reasonable accommodation. The matter is not quite that simple.

Plaintiff first requested her accommodation on January 10, 2003. The initial response she received from Supervisor Landry was that he could not determine whether or not Ms. Tines Jones suffered from a disability without obtaining further evidence. This is clearly a pretext for discrimination. Perhaps most importantly, in his January 31, 2003 letter to Plaintiff declining to grant her requested accommodation at that time, **Mr. Landry said nothing at all about the request (for a new work location) being unreasonable.** All of his questions (and supposedly the reason he said he needed to further evaluate the request), were directed toward whether Ms. Tines Jones had a disability. If indeed the requested accommodation was unreasonable (as Defendant later claimed in March 2003) this "unreasonableness" would have been mentioned in the January 31, 2003 response. The failure to mention this is an admission that the accommodation was reasonable.

As is set forth in the factual portion of this Opposition, Mr. Landry was aware from his own observations, from statements made to him by Supervisors Nason and Razel, and by documents he had received, that Ms. Tines Jones did indeed suffer from a disability. He was aware from all of that information that Ms. Tines Jones was unable to perform the essential functions of her job without an accommodation. Therefore, to the extent Mr. Landry either denied or did not act upon Ms. Tines Jones' request until March of 2003, he was not abiding by his obligation to engage in an interactive dialogue with Ms. Tines Jones to see if she needed a reasonable accommodation or to grant her a reasonable accommodation. Without regard to the damages Ms. Tines Jones might be entitled to by this breach of the law, Mr. Landry's actions in this regard did indeed constitute a violation of the Rehabilitation Act.

The second question on this issue is whether the accommodation Ms. Tines Jones requested, being allowed to work from a different work location, was a reasonable accommodation.

In this regard, there is a genuine issue of material fact in dispute which prevents Summary Judgment from being granted on this issue. Specifically, Ms. Tines Jones has set forth in her sworn Affidavit that it would have been possible for her to have performed her job functions from a different work location. Defendants have claimed that it was not feasible for Ms. Tines Jones to do this and therefore there is a genuine issue of material fact which has been established.

This issue of whether or not it would have been feasible for Ms. Tines Jones to work from a remote location (or a location other than Burlington Massachusetts) was not addressed by Defendant in its Brief. Although Defendant cites various cases stating that an employer is not required to transfer an employee to a different supervisor, and that a personality conflict with a supervisor does not constitute a disability, Defendants have not addressed the question of whether or not it would have been feasible to have Ms. Tines Jones work from a different work location. Defendants have stated that there were not vacancies available elsewhere in the New England Region, but once again, that is different from claiming that Ms. Tines Jones could not have performed her same job functions from a different location.

**D. HARASSMENT DUE TO DISABILITY**

Based upon the statements she made in her deposition and the letter she sent to Ms. Tines Jones on August 27, 2002, there should be no that Supervisor Nason believed that Ms. Tines Jones suffered from a disability. Among other things, Ms. Nason stated that Ms. Tines Jones' behaviors were frightening to herself and to other employees, that she had recommended Ms. Tines Jones seek counseling from the Employee Assistance Program, and (in her letter) she questioned whether Ms. Tines Jones was capable of engaging in appropriate behavior in the workplace without endangering the health or safety of herself or others. In that letter she also questioned the extent to which Ms. Tines Jones might be a danger to herself or her coworkers, whether her condition was treatable and what triggered her condition. Clearly, Ms. Nason believed that Ms. Tines Jones suffered from a serious psychiatric condition.

Ms. Nason's clear belief that Ms. Tines Jones suffered from a psychiatric disability must be used as a prism through which her treatment of Ms. Tines Jones during the second half of 2002 can be viewed.

The day after Ms. Tines Jones returned from a leave of absence in April of 2002, Ms. Nason gave her an oral reprimand. Shortly after Ms. Tines Jones returned to work in August of 2002, Ms. Nason questioned the adequacy of Ms. Tines Jones' medical documentation (despite Ms. Tines Jones' claims that the documentation had already been submitted to Ms. Nason). Ms. Nason refused to postpone a meeting she had asked to have with Ms. Tines Jones, despite the fact that the Employee Assistance Program Manager, Mr. Pagnini, had requested on behalf of Plaintiff that the meeting be continued. All of these actions by Ms. Nason caused Ms. Tines Jones to undergo extreme emotional stress, and in several instances caused her to have her seizure-like panic attacks.

There is no reasonable explanation for Ms. Nason's severity with Ms. Tines Jones. It can only be assumed that Ms. Nason was aware (due to her belief in Ms. Tines Jones' disability) that her actions would cause Ms. Tines Jones' symptoms to seriously elevate, or that she was biased against Ms. Tines Jones due to her belief that Ms. Tines Jones suffered from a psychiatric illness. In either event, Ms. Nason was subjecting Ms. Tines Jones to a harassing environment due to Ms. Tines Jones' disability. On this additional basis, Summary Judgment must be denied as to Ms. Tines Jones' disability claims.

**E. RETALIATION CLAIMS**

Defendant has asserted that Judgment must be entered in its favor and against Ms. Tines Jones on the claims of retaliation regarding the cancelled job vacancy and the alleged violation of the Interim Settlement Agreement. This is incorrect.

In relation to the cancelled vacancy, Plaintiff asserts that under the standards set forth in Burlington Northern, supra, the cancellation of a job vacancy is adequate to be an adverse action which can be the basis for a Charge of Discrimination. If an employee applies for a vacancy and that vacancy is cancelled in order to prevent the employee from obtaining

the job or competing for it due to his or her status as a member of a protected class, the action is adequate to be an actionable adverse action. Plaintiff does not deny that she ultimately will have to prove at trial that the reason for the cancellation of the vacancy was to prevent Plaintiff, an African-American female, from obtaining the position at issue. However, Plaintiff asserts that it must not be held that as a matter of law, the cancellation of a vacancy is inadequate to support a claim of race discrimination.

Secondly, Plaintiff asserts that the clear pretext she has cited in relation to the refusal to provide her training, is adequate to establish that the reasons advanced by Defendants for cancelling the vacancy at issue were pretextual as well. The same manager who made the decision not to send Ms. Tines Jones to the training course (Mr. Landry) was the individual who was responsible for canceling the vacancy. As a reasonable fact finder could believe that the false statement made to Ms. Tines Jones regarding training was a pretext for racial discrimination, and as the same managers were involved in the decision to cancel the vacancy Ms. Tines Jones had applied for, a fact finder could reasonably hold that the reasons given for the cancellation of the vacancy were merely a pretext for racial discrimination.

In relation to the violation of the Interim Settlement Agreement, Defendants rest their argument on the alleged failure of Ms. Tines Jones to exhaust her administrative remedies on this issue.

In relation to the Interim Settlement Agreement, as soon as Ms. Tines Jones felt that the Settlement Agreement was not being followed, she contacted Mr. Landry to complain about this. Plaintiff's Rule 56.1 Statement at Exhibit Two. In response, Mr. Landry attempted to have Ms. Tines Jones drop the matter and sit on her rights, writing to her that a return to the mediator might be "premature and unnecessary." Id.

Ms. Tines Jones did what she could to deal with the failure of Defendants to abide by the Interim Settlement Agreement. She raised the issue with her supervisor. She should not

be punished for her lack of knowledge that she was required to engage in further administrative action within thirty days.

As administrative deadlines in federal sector EEO cases are not jurisdictional and are subject to "waiver, estoppel and equitable tolling," see, e.g., 29 C.F.R. section 1614.604(c), Plaintiff asserts that she should not be penalized for her failure to meet all of the deadlines regarding the Interim Settlement Agreement, and summary judgment on this issue must be denied.

## IV. CONCLUSION

For all of the foregoing reasons it is respectfully requested that the Motion for Summary Judgment be denied.

Respectfully submitted,
YVONNE L. TINES JONES
By her Attorney,

/s/Mitchell J. Notis

Mitchell J. Notis, BBO # 374360
LAW OFFICES OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700

**CERTIFICATE OF SERVICE**

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 16th day of May, 2008.

/s/Mitchell J. Notis

MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445