UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10082-EFH

_____

**YVONNE L. TINES JONES,**
*Plaintiff*

v.

**NORMAN Y. MINETA, Secretary**
**U.S. DEPARTMENT OF TRANSPORTATION**
*Defendant*
_____

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF FACTS**

Plaintiff, Yvonne L. Tines Jones, hereby submits the following Local Rule 56.1 Statement of Facts as to Which There Exists a Genuine Issue to be Tried.

1. On February 11, 1999 Ms. Tines Jones learned of a federal benefits conference entitled "Benefits in the New Millennium" to be held on June 8 through June 11, 1999 in Washington, DC. Verified Complaint at ¶13 (the Verified Complaint is appended to Defendant's Rule 56.1 Statement as Exhibit 12). The Conference had always been referred to as "training." Tines Jones Affidavit in Case #1-99-1077 at page 2 The Affidavit in Case Number 1-99-1077 is appended to this Statement as Exhibit One.

2. Ms. Tines Jones told her supervisor, Susan Nason (a white female) about the Conference and asked if she could attend the training since she had developed an "individual development plan." Verified Complaint at ¶14.

3. Supervisor Nason told Ms. Tines that there was not enough money in the office budget to send anyone to the Conference. Verified Complaint at ¶15. Another manager in her office, Mr. Piro, also informed Ms. Tines Jones that there was not

1

      enough money in the budget to send anyone to the Conference. Tines Jones Affidavit, Exhibit One at page 1.

4. Despite the statements made to Ms. Tines Jones that there was not enough money to send anyone to the Conference, Defendant sent a coworker of Ms. Tines Jones, Mr. Larry Piro (a white male) to the Conference. Verified Complaint at ¶16. Prior to being sent to this particular Conference, Mr. Piro had never attended any of the telephone conferences regarding benefits. Tines Jones Affidavit, Exhibit One at page 3. When Ms. Tines Jones asked Mr. Piro how he felt about attending the training, he said he was only interested in the retirement portion, because he would be retiring soon and that he "was a placebo." Id.

5. On or about July 26, 1999, Ms. Tines Jones contacted an EEO Counselor and filed a formal Complaint alleging that the Agency had discriminated against her in her employment due to the failure to send her to the Conference. Verified Complaint at ¶18.

6. On September 10, 1999, Defendant posted a vacancy for the position of Personnel Management Specialist. Verified Complaint at ¶20.

7. On September 20, 1999, Ms. Tines Jones applied for the position. On September 28, 1999, Ms. Tines Jones was interviewed for the vacancy. Verified Complaint at ¶21.

8. On March 16, 2000, Supervisor Landry informed Ms. Tines Jones that he had decided not to fill the vacancy. Verified Complaint at ¶22.

9. On May 5, 2000, Ms. Tines Jones filed another formal Complaint against the Agency alleging discrimination on the basis of race, color and national origin due to the failure to appoint her to the vacancy. Verified Complaint at ¶24.

10. On April 19, 2001, the parties entered into an "Interim Settlement Agreement" pursuant to which Defendant agreed (among other things) to temporarily promote Ms. Tines Jones to the position of Personnel Management Specialist for a period of at least 9 months in return for Ms. Tines Jones holding her Complaint in abeyance. Verified Complaint at ¶27.

11. On February 6, 2002, Ms. Tines Jones' physician Dr. Blencowe requested a 30-day medical leave of absence for Ms. Tines Jones due to her severe stress. Verified Complaint at ¶31.

12. On February 10, 2002, Ms. Tines Jones started a two-month leave of absence. Verified Complaint at ¶32.

13. On March 1, 2002, Dr. Blencowe requested an extension of Ms. Tines Jones' leave of absence. Verified Complaint at ¶33.

14. On March 6, 2002, Ms. Tines Jones filed another formal Complaint of Discrimination against the Agency alleging that the Agency had failed to comply with the Interim Settlement Agreement due to her race and in retaliation for her prior Complaints for Discrimination. Verified Complaint at ¶34.

15. Prior to filing the Complaint referred to in paragraph 14 above, on November 15, 2001, Ms. Tines wrote to Supervisor Landry, suggesting that they go in front of the mediator again. Ms. Tines Jones' e-mail is appended to this Statement as Exhibit Two. Mr. Landry responded by writing that going back to their mediator might be premature and unnecessary. Mr. Landry's e-mail response is appended to this Statement as Exhibit Two.

16. In April 2002, Ms. Tines Jones returned to work under a considerable amount of stress and anxiety. Verified Complaint at ¶35.

17. In August, 2002, Supervisor Nason aggravated Ms. Tines Jones' stress and anxiety by denying that she (Ms. Nason) ever received medical documentation of Ms. Tines Jones' need for flex-time accommodation. As a result of this, Ms. Tines Jones had a panic attack and overdosed on panic attack medication in front of Ms. Nason, was immediately taken to the hospital and was placed on a suicide watch. Verified Complaint at ¶36. After overdosing on the medication on August 6, 2002, due to stress in meeting with Ms. Nason, Ms. Tines Jones had a panic attack on August 20, 2002, when her supervisor, Ms. Nason insisted upon meeting with her after she (Ms. Nason) had been advised by the Region's Employee Assistance Manager, Mr. Charlie Pagnini, that the meeting should be rescheduled to another date. Tines Jones Affidavit, Appended to Defendant's Rule 56.1 Statement as Exhibit 21, at page 2. Ms. Tines Jones had another panic attack after returning to work in March, 2003, after her

higher level supervisor Mr. Landry had forced her to return to work for Ms. Nason after Ms. Tines Jones had provided medical documentation indicating that a return to the work site and supervisor would be detrimental to her health. Id.

18. On September 20, 2002, Ms. Tines Jones provided Supervisor Nason with a letter from her doctor, Dr. Blencowe, advising Ms. Nason of Ms. Tines Jones' disability, depression and panic disorder. Verified Complaint at ¶37.

19. On December 17, 2002, Dr. Blencowe advised Supervisor Landry of Ms. Tines Jones' disability and requested a reasonable accommodation. Specifically, Dr. Blencowe advised "I recommend strongly that when Ms. Tines Jones returns on 1-6-03 that she be assigned to a different job site and not return to the FAA Regional Office in Burlington, MA. Ms. Tines Jones is being treated for panic disorder and depression, which is exacerbated markedly by an adverse work relationship at the FAA Regional Office in Burlington, MA. Therefore, I hope that you will grant Ms. Tines Jones' request to be transferred to a different work site." Verified Complaint at ¶38.

20. On January 10, 2003, Plaintiff requested reassignment to a different work location as a reasonable accommodation to her disability. Plaintiff's reasonable accommodation request is appended to Defendant's Rule 56.1 Statement as Exhibit 22. On January 15, 2003, Supervisor Landry acknowledged receiving Plaintiff's request for reassignment as a reasonable accommodation. Verified Complaint at ¶39.

21. On March 13, 2003, Ms. Tines Jones filed another formal Complaint of Discrimination against the Agency alleging she was denied a reasonable accommodation based on her mental disability when on March 13, 2003, her request for transfer was denied and that she had been subjected to disparate treatment based upon her race, and retaliation when her request for transfer was denied. Verified Complaint at ¶40.

22. The medical condition Ms. Tines Jones suffered from had been diagnosed by her psychiatrist as depression and panic attacks. Tines Jones Affidavit, Defendant's Exhibit 21, at page 1. Ms. Tines Jones provided notes from her psychiatrist and her therapist to Ms. Nason dated September 20, 2002, September 25, 2002, November 22, 2002, December 17, 2002, and December 30, 2002. Id. at p. 3.

23. There is an Air Traffic Division Personnel Office in Nashua New Hampshire. Ms. Tines Jones could access the same information there that the FAA had in its facility in Burlington Massachusetts. The information used in Burlington was from an online system from Oklahoma. Tines Jones Affidavit, Defendant's Exhibit 21, at page 4. Transfer to the Nashua New Hampshire facility would have allowed Ms. Tines Jones to continue her work as a Personnel Assistant and not work directly with Ms. Nason. Id.

24. After her leave of absence in the Spring of 2002, on her second day back to work Ms. Nason told Plaintiff that she was going to give Plaintiff an oral admonishment, and then gave Plaintiff a memo to document that she had presented Plaintiff with an oral admonishment. Id. at page 5.

25. On her arrival back to the office after being absent for two weeks in August, on August 19, 2002, Ms. Nason left a note on Plaintiff's desk regarding Plaintiff's departure time and my medical documentation. Id. page 6.

26. On or about August 27, 2002, Supervisor Nason gave Ms. Tines Jones a letter regarding Ms. Tines Jones medical condition. The letter is appended to this Statement as Exhibit Three. Among other things, the letter stated the following:

> "The purpose of this letter is to notify you of the requirements that must be met before you can return to a work status at the FAA.
> On August 6, 2002 you became very agitated, left work, were admitted to Lahey Clinic and then were out of work through August 16. …
> You returned to work on August 19, but based on the behaviors exhibited on August 19 and 20, cumulating with your collapse on August 20 in my office, it is clear that you were, in fact, not ready to return to work at that time. …
> Because of the events that occurred after your return to work on August 19, detailed medical documentation must be provided to me before you may return to work after your current absence. This information is necessary in order to ensure that you are actually ready and able to return, perform the full range of duties and responsibilities of your position including meeting with me as your supervisor when requested, and exhibit behaviors that are appropriate in a workplace without endangering the health or safety of yourself or others.
> The documentation must include detailed information as to diagnosis and prognosis, including what triggers the type of outbursts and agitations you have exhibited in the workplace, potential danger to yourself and coworkers, status of this condition (i.e. is it worsening or stable), current and planned future treatment, and whether the effect can be mitigated by

> workplace changes. … You will be placed on administrative leave, beginning August 29, until such time as the documentation is received, reviewed and a determination is made on your readiness to return to the workplace. I may call upon the Regional Flight Surgeon to assist in reviewing this information. …"

27. Ms. Tines Jones' supervisor, Gina Razel, felt that Ms. Tines Jones' conduct and behavior was often unpredictable. Ms. Tines Jones often rocked back and forth. Coworkers found this off putting. Ms. Razel spoke to Ms. Tines Jones about this. Razel deposition at 29-30 (Excerpts of the Razel deposition are appended to this Statement as Exhibit Four). Ms. Razel told Ms. Tines Jones that coworkers were not comfortable going into Ms. Tines Jones' office due to her behavior. Ms. Razel suggested that Ms. Tines Jones go to the Employee Assistance Program. Razel deposition at 34-35.

28. Ms. Tines Jones' supervisor, Susan Nason, discussed Ms. Tines Jones' diagnosis with Supervisor Razel and Supervisor Landry. Nason deposition at 34-35. (Excerpts of the Nason deposition are appended to this Statement as Exhibit Five).

29. Ms. Nason and other employees in the office felt that Ms. Tines Jones' behavior was frightening. Nason deposition at 40.

30. Ms. Nason was involved in responding to Ms. Tines Jones' request for a transfer to an office other than Burlington, Massachusetts and discussed this matter with Mr. Landry and Ms. Razel. Nason deposition at 41-42.

31. Ms. Nason left the August 27, 2002 letter (Exhibit Three) for Ms. Tines Jones. Nason deposition at 44-45.

32. Ms. Nason believed that Ms. Tines Jones did suffer from what her doctors had said, namely depression, anxiety and panic attacks. Nason deposition at 48, 49 and 54.

33. Mr. Landry supervised Ms. Nason and Ms. Razel. Landry deposition at 16. (Excerpts of the Landry deposition are appended to this Statement as Exhibit Six).

34. According to Mr. Landry, Ms. Tines Jones would rock in her chair and would hum to herself. Landry deposition at 16.

35. Mr. Landry assumes that as a result of not getting along with Supervisor Nason, Ms. Tines Jones' depression, anxiety and panic attacks got worse. Landry deposition at 40.

36. As early as April, 2002, Mr. Landry believed that Ms. Tines Jones suffered from anxiety and depression. Landry deposition at 70.

37. In relation to the letter from Supervisor Nason to Ms. Tines Jones dated August 27, 2002 (Exhibit Three), Mr. Landry was consulted in relation to the preparation of the letter. Landry deposition at 74.

38. When Charles Pagnini, the Employee Assistance Program Counselor met with Ms. Tines Jones, she had anxiety and stress. Mr. Pagnini recommended that Ms. Tines Jones get professional treatment. Pagnini deposition at 31-32. (Excerpts of the Pagnini deposition are appended to this Statement as Exhibit Seven).

39. Ms. Tines Jones indicated to Mr. Pagnini that Ms. Nason was being unfair with her, and that Ms. Nason mistreated her, in relation to work assignments. Pagnini deposition at 35-36.

40. Mr. Pagnini felt that Ms. Tines Jones had behavioral problems that got in the way of her doing her work. Pagnini deposition at 37-38.

Respectfully submitted,
YVONNE L. TINES JONES
By her Attorney,

/s/Mitchell J. Notis
_____
Mitchell J. Notis, BBO # 374360
LAW OFFICES OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700

**CERTIFICATE OF SERVICE**

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 16th day of May, 2008.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445

Case 1:05-cv-10082-EFH    Document 39    Filed 05/16/2008    Page 8 of 8